No. 512

First Circuit

STONE v. BATON ROUGE YELLOW CAB COMPANY

(December 3, 1929. Opinion and Decree.)
(December 30, 1929. Rehearing Refused.)
(February 3, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

Cross & Moyse, of Baton Rouge, attorneys for plaintiff, appellee.

Borron & Johnson, of Baton Rouge, attorneys for defendant, appellant.

MOUTON, J. About 11:30 at night, March 18, 1928, plaintiff was run over by a taxicab at the intersection of Church and Main streets in the city of Baton

Rouge. Joe Miledo, an employee of defendant company, was driving the cab at the time.

Suit was instituted by plaintiff for $7500 against defendant; judgment was rendered in his favor for $2,000, from which defendant appeals.

Main street runs east to west through the city of Baton Rouge, and Church street north and south. Jerome Bowling, witness for plaintiff, did not see when plaintiff was struck by the taxicab, but heard the crash which was caused by the impact. He says he was coming from Third street on the south side banquette of Main street, and was going east, intending to cross Church street at its intersection with Main street. As he came to the corner of Church street, or just before he got there, he says he noticed a figure walking ahead of him some 30 or 40 feet. When he got to the corner, he says, "this figure was past middle-ways of the street." His testimony is that as he stepped off from the sidewalk to go across Church street the cab "just missed" him; that he jumped back suddenly to the curbing of the sidewalk to avoid injury. He says he had looked to his left and north on Church street, and had not seen a taxicab nor heard the approach of a taxicab. As he jumped to the sidewalk or curbstone, and almost instantly, he heard the crash of the taxi with some object; that he then saw Stone, plaintiff, some 20 or 30 feet ahead of the taxicab trying to get up from where he had fallen. He tried a second time to get up, says the witness, was then taken into the cab Miledo was driving, and driven to the Baton Rouge General Hospital.

Plaintiff, at the time, was going east on Main street to his home. He was holding a piece of paper over his hat to protect it from dampness, we presume, as he says, a "sort of a mist was falling." When he came up to the corner of Main street, which was "brightly lighted," he says that he looked up both streets and saw no pedestrians in front of him on Main street nor vehicles of any kind, nor any up Church street. He then says: "So I walked on out into Church street, and I remember being as far as the middle of the street. That is all I remember about that walk." He then testifies he was struck by the cab when he was around the middle of Church street.

It seems that plaintiff first sued another corporation for the damages claimed herein. The original case was tried in December, 1928. It was brought out in the stenographic notes taken at that trial that Bowling, the witness referred to hereinabove, had fixed the distance at 10 feet at which plaintiff was ahead of the cab Miledo was driving. In the present case Bowling fixed the distance between 25 and 30 feet. Such a discrepancy as that in the testimony of a witness, in computing the approximate distance which may have actually existed at that time between the taxi and plaintiff, is not of such a character as to affect either his credibility or reliability. There may have been some doubt in the mind of the witness as to the distance plaintiff was ahead of him or of the taxicab at or about the time of the accident. Bowling says in his evidence that as he stepped into Church street to go across, the figure which he had noticed going in front of him (referring to plaintiff) was, to use his own words, "passed middle-ways of the street," meaning Church street. It was then that plaintiff was struck, according to Bowling's testimony.

Plaintiff says he walked into Church street to go across, and remembers "being

as far as the middle of the street." This he says is all that he remembered.

Joe Miledo, the taxi driver, says plaintiff had made two or three steps in the street when he struck him. Hence, on this point as to where plaintiff was at the time of the collision, we have the evidence of the plaintiff and of Bowling, then a total stranger to plaintiff and entirely disinterested, as against that of Miledo, the taxi driver. The preponderance of the evidence therefore clearly shows that plaintiff was then in the middle of that street which, the record shows, was brightly illuminated at its intersection with Main street. In connection herewith it may be appropriate to state that the headlights of the taxi were burning brightly; also, that there is nothing in the testimony of Miledo to show that his vision was affected by the illumination at the intersection of these streets or that his vision was obscured by rain or moisture on the windshield of the taxi.

Miledo claims that he was driving south on Church street, and was not coming from the east through Main street. Bowling and plaintiff both say that as they stepped into Church street, they looked up into that street, and that there were no taxicabs or vehicles of any kind coming southward thereon.

Again we have two witnesses contradicting the testimony of the driver of the taxi on this proposition. Whether Miledo came from Church street or from Main street is really unimportant, as he could and should have seen plaintiff then approximately in the middle of Church street, shown by the record to be over 40 feet wide at the intersection of these streets.

As such was the situation, he could have passed on either side of the plaintiff with perfect safety. The accident was doubtless the result of reckless driving on the part of Miledo, or of inattention, carelessness, or negligence.

Counsel for defendant contends that if defendant was at fault, plaintiff was likewise at fault, and cannot recover. We have so held in many decisions and so has every appellate court in this state. Here, however, the record shows that defendant had a perfect right to go across Church street under the existing conditions, was therefore not at fault, and did not in any way contribute to the accident. The principle invoked by plaintiff does not apply.

Counsel also refers to cases of emergencies creating unexpected hazards which could not reasonably be anticipated. There was no emergency in this case creating any unexpected hazards. The driver could naturally expect that pedestrians would cross the street, and should have been on his guard to avoid accidents that might occur. If he had exercised ordinary care, he would unquestionably have seen plaintiff in time to avert the collision, and can find no refuge in the plea of emergency or unexpected hazards.

## DAMAGES

No doubt, plaintiff was severely shocked by the collision, was temporarily dazed, and perhaps unconscious as a result. The next morning, however, as appears from the testimony of a physician and Kelly, a friend rooming next to him, he apparently had recovered his faculties, mental, if not physical. He was in bed for a couple of weeks, and suffered pains at

times, which he says he had not before experienced.

From the viewpoint of a layman, it is difficult to say if at the time of the trial his ailments were due directly to the injury he had suffered or to some other cause or causes. Unfortunately this uncertainty was not cleared up by the testimony of the learned members of the medical fraternity who testified in the case. The physicians also disagreed as to the permanent character of the injury; some being inclined to the opinion that plaintiff's injuries were permanent, while others entertained contrary views.

When such divergence of opinion exists between medical experts, it is rather difficult for judges, ignorant of medical science, to arrive at a definite conclusion on issues of this nature.

After a careful consideration of the evidence in the record, we have, however, reached the conclusion that the injury inflicted on plaintiff is not of a permanent character. He is doubtless entitled to damages for the sufferings he has undergone, but much as we dislike to interfere with the assessment of damages awarded by the trial judge, who is invested with much discretion on such questions, we think that the sum of $2,000 allowed below is excessive and should be reduced to $1,200, and as thus amended, affirmed; and it is so ordered, plaintiff, appellee, to be taxed with the cost of appeal, those of the lower court to be paid by defendant.